IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KEITH EDWARD DAVIS,           §
                              §
            Plaintiff,        §
                              §
V.                            §
                              §        No. 3:13-cv-3042-G-BN
                              §
CAROLYN W. COLVIN,            §
Acting Commissioner of Social Security,  §
                              §
            Defendant.        §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Keith Edward Davis, appearing *pro se*, seeks judicial review of a final

adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).

For the reasons stated herein, the hearing decision should be affirmed.

**Background**

Plaintiff alleges that he is disabled as a result of a fractured femur, pelvis, and

patella on the right knee. *See* Administrative Record [Dkt. No. 11 ("Tr.")] at 15, 181.

After his applications for disability and supplemental security income ("SSI") benefits

were denied initially and on reconsideration, Plaintiff requested a hearing before an

administrative law judge ("ALJ"). 137-43. The request for a hearing was dismissed as

untimely, but on appeal the dismissal was vacated, and the case was remanded for

further proceedings. *See id.* at 61-70. A hearing was held on October 17, 2012. *See id.*

at 27. At the time of the hearing, Plaintiff was 46 years old. *See id.* at 19, 30. He is a

high school graduate, and has past work experience as a driver and a security guard.

*See id.* at 19, 30, 38-40. Plaintiff has not engaged in substantial gainful activity since April 15, 2006. *See id.* at 14.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. *See id.* at 20. Although the medical evidence established that Plaintiff suffered from status-post surgical repair of multiple right lower extremity fractures, osteoarthritis of the right knee and hip, back pain, gout, hypertension, and obesity, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 14, 30-33, 41. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of sedentary work but could not return to his past relevant employment. *See id.* at 14, 19. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a food and beverage order clerk, surveillance system monitor, or dowel inspector — jobs that exist in significant numbers in the national economy. *See id.* at 20, 54.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed. *See id.* at 1-6.

Plaintiff then filed this action in federal district court. *See* Dkt. No. 3. Plaintiff appears to argue that substantial evidence does not support the ALJ's determination that Plaintiff has not been under a disability, as defined by the Social Security Act, and Plaintiff specifically challenges the accuracy of several of the ALJ's factual findings and the ALJ's alleged failure to consider all of Plaintiff's impairments. *See* Dkt. Nos. 23, 32.

The undersigned concludes that the hearing decision should be affirmed in all respects.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393

(5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation

process that must be followed in making a disability determination:

1.  The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.  The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.  If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

See 20 C.F.R. § 404.1520(b)-(f); Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007)

("In evaluating a disability claim, the Commissioner conducts a five-step sequential

analysis to determine whether (1) the claimant is presently working; (2) the claimant

has a severe impairment; (3) the impairment meets or equals an impairment listed in

appendix 1 of the social security regulations; (4) the impairment prevents the claimant

from doing past relevant work; and (5) the impairment prevents the claimant from

doing any other substantial gainful activity."). The claimant bears the initial burden

4

of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* But the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully

developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

That Plaintiff is *pro se* in his appeal of the ALJ's decision imposes an additional layer of consideration for the Court. As other courts have recognized, a lay plaintiff is unfamiliar with legal terms of art such as "substantial evidence" and lacks expertise in the rules governing Social Security regulations. *See Washington v. Barnhart*, 413 F. Supp. 2d 784, 791 (E.D. Tex. 2006). Moreover, no statute, regulation, or court decision prescribes a precise analytical model for *pro se* actions seeking judicial review of adverse administrative decisions by the Commissioner. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 752 (E.D. Tex. 2005). More often than not, *pro se* litigants in Section 405(g) appeals invite the Court to re-weigh the evidence and come to a different conclusion than did the Commissioner, which the Court may not do. *See Washington*, 413 F. Supp. 2d at 791. Necessarily, the level of scrutiny rests in each reviewing court's sound discretion. *See Elam*, 386 F. Supp. 2d at 753. But several universal principles factor logically into that equation. Courts must construe *pro se* pleadings and arguments liberally in light of a party's lay status but must maintain their role as neutral and unbiased arbiters. That is, courts are not bound to "scour the record for every conceivable error," but fundamental fairness and interests of justice require that courts not disregard obvious errors, especially when a lay litigant's ignorance may cause legal errors to go unrecognized. *See id*.

To strike a fair balance, the undersigned follows courts before it in deciding to engage in more than a superficial review of the Commissioner's decision. *See id.* But, since the Court is not an advocate, it has no duty to plumb the depths of every facet of the administrative process. In the instant case, the undersigned elects to examine the decision to the same extent as the undersigned believes an experienced lawyer would when advising a potential client regarding the advisability of pursuing an action for judicial review. "This approach assumes that the practitioner is experienced in the subject matter, and willing, but not compelled, to represent the plaintiff. It further assumes that the practitioner's first exposure to the case is after the Commissioner's decision has become final." *Id.* In following this approach, the undersigned will engage in three critical inquiries:

1.Does the Commissioner's decision generally reflect the protocol established in the Social Security Act, the Commissioner's own regulations, and internal policies articulated in Social Security Rulings?

2. Were the Commissioner's critical fact findings made in compliance with applicable law?

3. Does substantial evidence support those critical findings?

*Washington*, 413 F. Supp. 2d at 792.

### Analysis

In his decision, the ALJ found that Plaintiff had not been under a disability within the meaning of the Social Security Act since April 15, 2006, the date that Plaintiff alleged that he became disabled. *See* Tr. at 14. In making this determination,

the ALJ conducted an extensive analysis of the law and evidence before him, including

numerous medical records from June 2002 through September 2012.

The ALJ generally found that the medical records established that Plaintiff

suffered from one or more serious impairments under *Stone v. Heckler*, 752 F.2d 1009

(5th Cir. 1985), and the applicable Social Security regulations, but the ALJ found that

the signs, symptoms, and history of treatment presented in the evidence were

inconsistent with any impairment of listing-level severity. *See* Tr. at 14. The ALJ

concurred with the State agency medical examiner and found that Plaintiff had the

residual functional capacity to perform a limited range of sedentary work. *See id.* at

14, 19.

In light of Plaintiff's *pro se* status and lack of extensive briefing, the undersigned

examined the evidence submitted by Plaintiff and the ALJ's decision as experienced

counsel would in order to determine whether the finding of no disability was supported

by substantial evidence or was erroneous in any manner.

1.   <u>Plaintiff's new evidence does not affect the ALJ's decision.</u>

Plaintiff challenges several factual statements in the ALJ's decision and

attaches copies of documents to his response to refute some of those statements. *See*

Dkt. No. 32. The undersigned construes these complaints as an argument that the case

should be remanded for consideration of new evidence.

The Court's review of social security appeals is "wholly appellate," and the

consideration of new evidence in the first instance is prohibited. *Ellis v. Bowen*, 820

F.2d 682, 684 (5th Cir. 1987) (citing *Bradley v. Bowen*, 809 F.2d 1054 (5th Cir. 1987)).

Upon the discovery of new evidence, 42 U.S.C. § 405(g) authorizes district courts to remand a case back to the Commissioner for further proceedings, if a plaintiff makes an appropriate showing that such a measure is warranted:

> The court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding....

42 U.S.C. § 405(g). The United States Court of Appeals for the Fifth Circuit has explained that "evidence, not in existence at the time of the administrative ... proceedings, meets the 'new' requirement for remand" pursuant to sentence six of § 405(g). *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). A court may remand the case so long as the new evidence is material and good cause has been shown for why the evidence was not submitted into the record in prior proceedings. *See Taylor ex rel. I.C.T. v. Comm'r*, No. 3:11-cv-1015-K-BF, 2012 WL 2794972, at *6 (N.D. Tex June 8, 2012), *rec. adopted*, 2012 WL 2829457 (N.D. Tex. July 9, 2012). To be material, "there must be a reasonable possibility that the new evidence would have changed the outcome of the determination." *Id.* (citing *Bradley*, 809 F.2d at 1058) (additional citations omitted); *see also Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

"Implicit in the materiality requirement ... 'is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.'" *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) (quoting *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)). Evidence acquired

after a decision to deny benefits is not automatically irrelevant, because the evidence may be used to determine the severity of a condition as it previously existed or to identify the onset date of slowly progressive impairments. *See Sadler v. Colvin*, No. 4:12-cv-447-Y, 2013 WL 5314033, at *8 (N.D. Tex. Sept. 20, 2013). But the evidence must relate to the relevant time period for which benefits were denied to be considered for those purposes. *See id.*

In addition to demonstrating that the evidence is material, a claimant must also demonstrate good cause by providing a proper explanation as to why the new evidence was not submitted earlier. *See Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) (citation omitted).

Plaintiff impliedly argues that the new evidence is material because it shows that some of the ALJ's statements are incorrect. For example:

- The ALJ observed that there was a six-year lapse in medical treatment from 2002 to 2008, which the ALJ found to be clearly inconsistent with Plaintiff's allegations of disabling symptoms since his original injury in a car accident in June 2002. *See* Tr. at 16. To refute that statement, Plaintiff attached medical records from 2004, 2005, 2007, and 2008.

- The ALJ found that Plaintiff had the residual functional capacity to perform a limited range of sedentary work, which included the ability to lift and carry ten pounds occasionally and less than ten pounds frequently, and to stand and walk for up to two hours in a eight-hour work day. *See* Tr. at 14, 459-66 (state agency medical examiner's report). To refute that statement, Plaintiff attached pages

2 and 3 of a September 21, 2007 report from Juan C. Yabraian, M.D., who recommended that Plaintiff cannot sit, stand, or walk about for more than 30 minutes at a time and that Plaintiff can lift and carry ten to fifteen pounds.

· The ALJ stated that three of Plaintiff's medications were discontinued in June 2011 when hydrocodone was prescribed and that Plaintiff was given a new prescription for one of the medications in September 2011. *See* Tr. at 18; *see also id.* at 485, 486 (medical record discontinuing an anti-inflammatory and non-narcotic pain medications when a narcotic pain medication was prescribed). To counter the statement that the medications were discontinued, Plaintiff attached documents showing prescriptions for two of those medications in 2012.

· The ALJ also stated that in January 2012, Plaintiff had not filled his prescription for Naproxen due to "lines in the pharmacy." *Id.* at 18 (quoting *id.* at 609). To counter that statement, Plaintiff attached mail order forms for Naproxen in 2013 and 2014.

Even if the new evidence was material, the challenged statements by the ALJ are supported by the medical evidence in the record and the new evidence would not change the outcome of the ALJ's determination. Furthermore, Plaintiff does not explain why the new evidence was not submitted earlier. With the exception of the mail order forms dated 2013 and 2014, the new evidence was in existence prior to the administrative hearing. And the documents from 2013 and 2014 are not relevant as to whether Plaintiff filled a prescription in 2012.

11

Accordingly, the undersigned will not consider these records in determining whether the ALJ's decision is supported by substantial evidence and will not recommend reversing and remanding the case based on the information contained in these records.

2.    <u>The ALJ properly applied the law and the facts.</u>

The undersigned first reviews this *pro se* appeal to determine whether the Commissioner's decision generally reflects the protocol established in the Social Security Act, the Commissioner's own regulations, and internal policies articulated in Social Security Rulings and whether the Commissioner's critical fact findings were made in compliance with applicable law. *See Thomas v. Colvin*, No. 3:12-cv-4415-P-BN, 2013 WL 6869652, at *4 (N.D. Tex. Dec. 30, 2013).

The record reflects that the ALJ conducted an extensive review of the law and facts applicable to Plaintiff's disability claim during the five-step sequential evaluation process. *See* Tr. at 12-20. The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2010 and has not engaged in substantial gainful activity since April 15, 2006. *See id.* at 14. The ALJ then found that Plaintiff's combination of impairments was severe under the correct standard, *see Stone,* 752 F.2d at 1101, citing extensively from the medical evidence presented in the record, *see* Tr. at 14. In finding that Plaintiff's impairments are not severe enough to meet the criteria of a listing under Step 3 of the sequential evaluation, the ALJ supported his determination with a discussion of the relevant evidence. *See Audler,* 501 F.3d at 448-49. That is, he explained that the medical

opinions and other evidence of record did not establish that Plaintiff's symptoms were sufficiently severe to meet or medically equal one of the impairments listed in the Social Security regulations. *See* Tr. at 14-19. The ALJ made this finding in large part due to his determination that Plaintiff's allegations of functional limitation were not fully credible. *See id.* An ALJ's findings "regarding the debilitating effect of the subjective complaints are entitled to considerable judicial deference." *Haywood*, 888 F.2d at 1470 (internal quotation and citation omitted).

Based on these findings, the ALJ found that Plaintiff was unable to perform any past relevant work. *See* Tr. at 19. The ALJ therefore consulted a vocational expert ("VE") to determine whether Plaintiff had the residual functional capacity to perform other work that exists in significant numbers in the regional or national economy. The VE testified that an individual with Plaintiff's age, education, work experience, and residual functional capacity would be able to perform the requirements of representative occupations such as a food and beverage order clerk, surveillance system monitor, and dowel inspector and that those jobs that exist in significant numbers in the national economy. *See id.* at 19-20. Based on the VE's testimony, the ALJ found that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *See id.* at 20.

The undersigned has reviewed the ALJ's decision and the medical records submitted. Based on this review, the undersigned concludes that the Commissioner's decision generally reflects the protocol established in the Social Security Act, the Commissioner's own regulations, and internal policies articulated in Social Security

13

Rulings and that the Commissioner's critical fact findings were made in compliance with applicable law. *See Thomas,* 2013 WL 6869652, at *4.

3.   <u>Substantial evidence supports the ALJ's finding of no disability.</u>

The undersigned's final inquiry is whether substantial evidence supports the ALJ's findings.

The ALJ first reviewed all of the records and determined that the medical opinions and other evidence did not support a finding that Plaintiff's impairments meet or equal any impairment in the Social Security regulations and that Plaintiff retains the residual functioning capacity to perform work that exists in significant numbers in the national economy. *See* Tr. at 14-20. Concluding that the ALJ's findings were not supported by substantial evidence would only be appropriate if no credible evidentiary choices or medical findings supported his decision. *See Simeon ex rel. D.M.B. v. Astrue*, No. A-09-CA-756-LY, 2010 WL 2160834, at *4 (W.D. Tex. May 25, 2010) (citing *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988)).

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993); 20 C.F.R. § 404.1527(d)(2). A treating source is a claimant's "physician, psychologist, or other acceptable medical source" who provides

14

or has provided a claimant with medical treatment or evaluation and who has or has had an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. A treating source opinion cannot be rejected absent good cause for reasons clearly articulated in the hearing decision. *See Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir. 2001).

In this case, there was no treating physician's opinion concerning whether Plaintiff's medical conditions limited or impaired his ability to engage in work related activities. Other than Stella Nwankwo, M.D., who served as the medical consultant, the only doctors mentioned in the administrative record are those who treated Plaintiff in 2002 after the car wreck in which he sustained the injuries to his femur, pelvis, and right knee and afterward when he presented with particular medical issues, primarily at Parkland Health and Hospital System. But the evidence does not include any indication that any one other than the medical consultant rendered an opinion that could be construed as commenting on Plaintiff's ability to work. They simply diagnosed his medical conditions and discharged him with instructions regarding treatment and follow-up care. Accordingly, the ALJ did not err because there was no treating or examining source's opinion to consider, much less to reject. *See Walker v. Astrue*, No. 7:11-cv-131-O-BN, 2013 WL 796770, at *7 (N.D. Tex. Feb. 4, 2013), *rec. adopted*, 2013 WL 818779 (N.D. Tex. Mar. 5, 2013); *see also Gonzales-Sargent v. Barnhart,* No. SA-06-CA-355-XR, 2007 WL 1752057, at *8 (W.D. Tex. June 15, 2007) ("Since there was no rejection of a treating physician's opinion, the ALJ was required to explain in her

decision the weight given to the opinions of the state agency medical consultants and the medical expert.").

The ALJ is not bound by the state agency physician's opinions, but he may not ignore them and must explain in his decision the weight given to those opinions. *See* SSR 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996); *Helbing v. Astrue*, No. 4:11-cv-704-Y, 2012 WL 6719469, at *12 (N.D. Tex. Oct. 29, 2012), *rec. adopted*, 2012 WL 6709666 (N.D. Tex. Dec. 27, 2012). Here, the ALJ gave the state agency physician's opinion considerable weight. *See* Tr. at 17. The ALJ explained that Dr. Nwankwo imposed no functional limitations on Plaintiff's ability to work, *see id.*, and that the state agency medical consultants determined that Plaintiff could perform the exertional demands of sedentary work activity with the use of a cane for ambulation, with occasional postural maneuvers, and with avoidance of hazards in the workplace and a limitation to simple, unskilled work due to the effects of pain and the use of prescription pain medication, *see id.* at 19.

Plaintiff specifically contends that the ALJ did not consider all of his severe impairments. The ALJ determined that Plaintiff's status-post surgical repair of multiple right lower extremity fractures, osteoarthritis of the right knee and hip, back pain, gout, hypertension, and obesity were severe impairments. *See id.* at 14. Plaintiff asserts that the ALJ failed to consider or acknowledge his hypercholestorlemia, kidney disease, constant usage of the bathroom, sacroilitis, greater trochanteric bursitis of the hip, degenerative joint disease of the knee, or the fact that the side effects of his medication were disabling. Plaintiff also refers to a diagnosis date of October 18, 2013,

16

but it is unclear which of his conditions was diagnosed then, and that date is after both the administrative hearing and the Appeals Council's denial of Plaintiff's appeal. *See* Dkt. No. 23 at 4.

"[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone*, 752 F.2d at 1101. The ALJ accurately stated and applied the *Stone* standard. *See* Tr. at 14-19.

The ALJ considered evidence in the record concerning Plaintiff's back, hip, and knee complaints. *See id.* at 14-19. The ALJ also considered the side effects of Plaintiff's medication and included restrictions in the residual functional capacity determination based on those side effects. *See id.* at 19. And, even if the ALJ's failure to make a finding of the severity of these additional impairments was erroneous, the error is harmless because there is no objective medical evidence in the record linking these impairments to work-related limitations. *See Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012) ("[P]rocedural perfection is not required unless it affects the substantial rights of a party.").

A thorough review of the record confirms that substantial evidence supported the ALJ's findings. Although the record is replete with medical evidence to establish the numerous impairments suffered by Plaintiff, it does not reflect that Plaintiff has the exertional, postural, or manipulative limitations that would prevent him from performing work that exists in significant numbers in the national economy.

## Recommendation

The hearing decision should be affirmed in all respects.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 6, 2014

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE